Francis J. EVERHART, M.D.,
Plaintiff-Appellant,

v.

JEFFERSON PARISH HOSPITAL DISTRICT NO. 2 and East Jefferson Hospital Board, Defendants-Appellees.

No. 84–3586
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 22, 1985.

Douglas & Douglas, R. Travis Douglas, Kenner, La., for plaintiff-appellant.

Lucas J. Giordano, New Orleans, La., for defendants-appellees.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Appellant Francis J. Everhart, M.D., (Everhart) applied for and was denied admission to the medical staff of appellee East Jefferson General Hospital, located in Jefferson Parish, Louisiana. Everhart brought this action seeking declaratory and injunctive relief in connection with that denial of admission. Everhart sought declaratory relief from alleged denials of procedural and substantive due process of law in

violation of the Fourteenth Amendment to the United States Constitution. In addition, he requested preliminary and permanent injunctive relief requiring that the hospital appoint him to the medical staff.

After conducting hearings on April 1 and April 21, 1981, the district court denied Everhart's request for preliminary injunctive relief. We affirmed the district court's denial in a per curiam opinion entered March 4, 1982. The case was then tried on its merits and the district court entered judgment in favor of defendants, with comprehensive written reasons, dismissing plaintiff's complaint. Everhart then timely appealed from that judgment. For the reasons that follow, we affirm.

## I. FACTS

Everhart is a licensed physician, duly authorized to practice medicine in the State of Louisiana. He is board certified and specializes in cardiology. Jefferson Parish Hospital District No. 2, which does business as East Jefferson General Hospital (the hospital), is a political subdivision of the State of Louisiana, having been created by Ordinance No. 4049 of the Jefferson Parish Louisiana Council pursuant to the authority granted it under Louisiana Revised Statute Title 46, Chapter 10. The hospital is governed by the Board of Directors, which is appointed by the Jefferson Parish Louisiana Council.

The medical staff of the hospital is made up of over 400 doctors, is organized separately from the hospital itself, and has its own by-laws. Under the by-laws, an application for medical staff membership is sent to the executive director of the hospital. After the director collects all references and other materials deemed pertinent, the completed application is referred to the credentials committee for its consideration. This committee then transmits the completed application to the medical staff's executive committee which makes a recommendation to the hospital board; the board then makes the final decision to grant or deny staff membership.

On March 24, 1980, Everhart submitted his application for medical staff membership to Mose Ellis, the executive director. At that time he also requested privileges in internal medicine and cardiology. The application form submitted by Everhart reflects that he graduated from medical school in 1962, completed his internal medicine residency in 1965 and was licensed to practice medicine in nine states. In addition, from July 1967, when Everhart first entered the private practice of medicine, until 1980, when he first arrived in Louisiana, he had begun and left six different practices. The application further reflects that his staff privileges had been suspended from Sacred Heart Hospital in Spokane, Washington, from July 1975 to November 1975 for "inappropriate behavior."

Pursuant to the by-laws, Everhart's application was referred to the credentials committee for review. On August 7, 1980, the committee reviewed twelve applications, and voted to recommend to the executive committee that eleven physicians be granted staff privileges. Although it found Everhart's "credentials in order," it made no recommendation to the executive committee as required by the by-laws. On August 12 the executive committee denied Everhart's application for membership to the medical staff.

On August 13 Ellis wrote Everhart, informing him that the executive committee voted not to recommend his appointment; the letter gave no reason for the committee's action. The next day Everhart requested a review of the executive committee's action, reasons for the adverse decision and the data that was reviewed by both the credential and executive committees as well as other materials. Pursuant to this request and in accordance with Art. VIII, Sec. 3, of the by-laws, Dr. Gustavo Colon, president of the medical staff at the hospital and chairman of the executive committee, appointed an ad hoc committee, consisting of Drs. George Welch, chairman, Isadore Yager, chief of medicine, Samuel Leonard, Robert Miller and Irving Rosen.

On August 22 Dr. Colon notified Everhart in writing that the ad hoc committee would meet on August 27 and provided him with a list of the committee members. The notice did not contain the reasons for the adverse decision of the executive committee. Nevertheless, the ad hoc committee conducted hearings on August 27, September 8, and September 25. Everhart was present at each hearing and a record of the hearings was made by an electronic recording unit. On October 7 the ad hoc committee voted to recommend to the executive committee that Everhart not be appointed to the medical staff; on the same date the executive committee accepted the recommendation of the ad hoc committee.

After receiving notice of the committee's decision, on October 15 Everhart requested appellate review by the hospital board as well as a transcript of the committee hearings. On October 31 Ellis notified Everhart that a hearing would be conducted by the hospital board on November 6. On November 6 a duly appointed committee of the governing body, consisting of eight board members held a hearing at which Everhart, represented by counsel, was present. On February 17, 1981, the board found that the executive committee had not acted arbitrarily or capriciously and affirmed its decision denying the application for staff membership. Thereafter, Everhart brought this action before the district court complaining that his constitutional right to procedural and substantive due process had been violated in the denial of his admission to the medical staff of the hospital.

## II. PROCEDURAL DUE PROCESS

Everhart contends that the procedures followed by the defendants which culminated in the denial of his application for staff membership, taken together, deprived him of his right to procedural due process. In *Knight v. Louisiana State Board of Medical Examiners*, 211 So.2d 433 (La.App. 4th Cir.1968), a case involving the suspension of a physician's license, the court stated that "[t]o meet the requisites of procedural

due process the notice must be reasonably calculated to apprise the accused of the pending action and to afford him an opportunity to defend himself." *Id.* at 438. In addition, we are cognizant that "[a]n essential element of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *Cleveland Board of Education v. Loudermill,* —— U.S. ——, ——, 105 S.Ct. 1487, ——, 84 L.Ed.2d 494 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

■ Everhart has several specific complaints regarding his procedural due process claim. First, he asserts, correctly, that the credentials committee, in violation of Art. V, Sec. 2(a), of the by-laws, failed to recommend to the executive committee that he be accepted, rejected, or that his application be deferred. While the committee's failure to make such a recommendation to the executive committee does indeed constitute a technical violation of the by-laws, we fail to see how it has harmed Everhart. This technical violation certainly does not rise to the level of a deprivation of a constitutional right.

■ Everhart also contends that the notice he received of the ad hoc committee hearing stated only the time and place of the hearing and not the reasons for which the executive committee denied him staff membership as required by Art. VIII, Sec. 3(b), of the by-laws. The evidence, however, is clear that Everhart knew the reason he had been rejected was because of his past history of inappropriate behavior and his difficulty with interpersonal relationships at other hospitals. Everhart had ample notice to be apprised of the reasons for the rejection and to prepare his defense. Moreover, after a member of the ad hoc committee at the hearing asked Everhart if he desired written notice of the reasons for his rejections, Everhart expressly waived the requirement. We find no constitutional deprivation here.

■ Everhart next challenges the timing of the notice and the sufficiency of the materials provided to him for his appeal to the hospital board. Article VIII, Sec. 6(e), of the by-laws required that Everhart have (a) access to the ad hoc committee hearing record and all materials considered in the decision against him, and (b) fifteen days to submit a written statement in his behalf. Defendants concede that Everhart received notice on November 3, 1980, and that pursuant to such notice the board hearing was scheduled three days later for November 6. The evidence reveals, however, and Everhart concedes in his brief on appeal, that he expressly waived the procedural deficiency in the notice in order to proceed immediately with the appeal to the hospital board. In addition, Everhart had access to and in fact reviewed tapes prior to the hearing before the hospital board. The testimony of Drs. Yager and Colon establishes that Everhart received all pertinent, available documents. The appeal to the hospital board was not procedurally defective.

■ Finally, Everhart contends that two doctors sitting on separate committees were biased because at that time they were members of a corporation that had an exclusive right to practice invasive cardiology at the hospital, and thus had direct economic conflicts of interest with Everhart. There is no evidence to support such a contention. Everhart would have us believe that a letter to the credentials committee, written by one of the doctors, raising a question as to Everhart's prior difficulties is evidence of such bias. We disagree. The doctor testified that he wrote the letter only after reviewing Everhart's application and file and only after becoming familiar with the reference letters that question Everhart's ability to work effectively with a medical staff. Further, Everhart brought forth no evidence to contradict the admittedly self-serving testimony of both doctors—the fact that Everhart sought cardiology privileges had nothing to do with their voting to deny him staff membership.

Everhart's complaint points this Court to several technical violations of the medical staff by-laws; we do not believe, however, that even taken together, these violations rise to the level of a constitutional deprivation of procedural due process. Everhart was fully aware of the reason for his rejection and, further, he had access to all the materials and reports that were relied upon and utilized by the defendants. In addition, he was afforded sufficient notice and an adequate opportunity (several lengthy hearings) and the means by which (calling any witnesses and presenting any evidence) to address and respond to the reason for his rejection. In some respects where the hearings were procedurally defective, Everhart expressly waived those defects. Accordingly, we are unable to say that Everhart was not apprised "of the pendency of the action and [afforded] an opportunity to present [his] objections." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657. The procedures utilized in reviewing and rejecting Everhart's application for admission to the medical staff were adequate and appropriate under the circumstances and nature of this case.

## III. SUBSTANTIVE DUE PROCESS

Everhart contends that the hospital's decision to deny him staff membership was based on grounds having no reasonable relationship to the purpose of providing adequate medical care, i.e., his difficulty in interpersonal hospital relationships. He also contends that there was no evidence that his relationship with the hospital staff would affect patient care. We find both contentions unavailing.

■ Substantive due process is satisfied if applicants are judged and considered on "grounds that are reasonably related to the purpose of providing adequate medical care." *Schlein v. Milford Hospital*, 423 F.Supp. 541, 544 (D.Conn.1976), aff'd, 561 F.2d 427 (2d Cir.1977) (citing *Sosa v. Board of Managers of Val Verde Memorial Hospital*, 437 F.2d 173 (5th Cir.1971)). Article III, Sec. 2(a), of the by-laws, the basis for Everhart's rejection, requires that an applicant document his background, experience, training and demonstrated competence, his

adherence to professional ethics, his good reputation and his "ability to work with others, with sufficient adequacy to assure the medical staff and the governing body that any patient treated by him in the hospital will be given a high quality of medical care." Everhart contends that one's "ability to work with others" has no reasonable relation to the provision of high quality or even adequate medical care. Even if this consideration is reasonably related to the provision of the appropriate degree of medical care, he contends there was no evidence that had he joined the medical staff, that patient care would then be impacted negatively.

■ With respect to the first contention, we agree with the district court that *Sosa v. Board of Managers of Val Verde Memorial Hospital,* 437 F.2d 173 (5th Cir.1971), disposes of Everhart's contention and controls our decision. In *Sosa,* this Court stated:

> We think the stated factors used by the Credentials Committee of the Medical Staff to evaluate staff applicants are reasonable. This court has recently indicated that staff appointments may be constitutionally refused if the refusal is based upon "any reasonable basis, such as the professional and the ethical qualifications of the physicians or the common good of the public and the Hospital." *Foster v. Mobile County Hospital Board, supra,* 398 F.2d [227] at 230. Admittedly, standards such as "character qualifications and standing" are very general, but this court recognizes that in the area of personal fitness for medical staff privileges precise standards are difficult if not impossible to articulate. *North Broward Hospital District v. Mizell* [148 So.2d 1 (Fla.1962) ] *supra.* The subjectives of selection simply cannot be minutely codified. The governing board of a hospital must therefore be given great latitude in prescribing the necessary qualifications for potential applicants.

*Id.* at 176. Everhart appears to concede that his "ability to work with others" is a standard reasonably related to the provision of adequate medical care when he quotes extensively from *Miller v. Eisenhower Medical Center,* 27 Cal.3d 614, 166 Cal.Rptr. 826, 834, 837, 614 P.2d 258, 266, 269 (Cal.1980), in his brief on appeal. *Miller* held that a by-law providing that physician-applicants be able to "work with others" was a valid requirement. The language in *Miller* does evidence that court's concern with the potential for abuse of such a provision "as a subterfuge where considerations having no relevance to fitness are present...." *Miller,* 166 Cal. Rptr. at 837, 614 P.2d at 269. However, the *Sosa* opinion also evidences a similar concern "that in exercising its broad discretion the board must refuse staff applicants only for those matters that are reasonably related to the operation of the hospital." *Sosa,* 437 F.2d at 176–77. We think Everhart's ability to work with others—his interpersonal relationships at the hospital—is a consideration that is reasonably related to the provision of adequate medical care. Consequently, the board's reliance upon this factor to deny staff membership to Everhart was neither arbitrary nor capricious and did not deprive him of substantive due process.

■ Everhart also asserts that the evidence does not support the necessary finding that any interpersonal deficiencies on his part presented a "real and substantial danger that patients treated by him might receive other than a 'high quality of medical care....'" (quoting *Miller,* 166 Cal. Rptr. at 834, 614 P.2d at 266). Unlike the California Supreme Court, we have not chosen to so limit the discretion of a hospital board to deny staff applicants; rather, we have made clear that:

> the decision of a hospital's governing body concerning the granting of hospital privileges is to be accorded great deference. This is so because of the court's obvious lack of medical expertise. Judicial intervention must be limited to an assessment of those factors which are within the court's expertise to review. For this reason, our cases have gone no

further than to require that the procedures employed by the hospital are fair, that the standards set by the hospital are reasonable, and that they have been applied without arbitrariness and capriciousness. *Woodbury v. McKinnon,* 447 F.2d [839] at 845 [ (5th Cir.1971) ]. As we stated in *Woodbury,* "[t]he decision resulting from the hearing must be untainted by irrelevant considerations and supported by sufficient evidence to free it from arbitrariness, capriciousness or unreasonableness." *Id.* at 842.

*Laje v. R.E. Thomason General Hospital,* 564 F.2d 1159, 1162 (5th Cir.1977), *cert. denied,* 437 U.S. 905, 98 S.Ct. 3091, 57 L.Ed.2d 1134 (1978).

We do not agree with Everhart's contention that his relationship with hospital personnel and the potential effects of poor interpersonal relationships is not a matter of medical expertise. While we agree that the character of a man is, in essence, a question of human nature, when that character becomes embroiled in the confines of a hospital environment, his character and his ability to work effectively in such an environment is a question uniquely suited to the hospital board. As a result we need only determine whether the denial of medical staff membership to Everhart was "supported by sufficient evidence to free it from arbitrariness, capriciousness or unreasonableness." *Id.* We believe in this case it was supported by such evidence.

There was certainly sufficient evidence to indicate that Everhart had a history of difficulties with hospital personnel; he had been suspended for five months from Sacred Heart Hospital in Spokane, Washington, for inappropriate behavior. Further, the defendants received numerous letters from various individuals in hospitals that had been associated with Everhart indicating not only his difficulties with interpersonal relationships but also some emotional problems. Moreover, the high number of hospitals at which he had worked over a relatively short period of time could lead one to infer that Everhart would not have been able to effectively deal with those persons he came in contact with at the hospital. In addition, there was sufficient evidence that quality patient care demands that doctors possess at least a reasonable "ability to work with others." During the hearing process several doctors testified specifically, contrary to Everhart's assertion, to the disruptive and potentially serious effect that poor interpersonal relationships may have on the smooth and efficient operation of the hospital.

Accordingly, we hold that there was sufficient evidence to justify the board's conclusion that Everhart was unable competently to work with others on the hospital staff and that such inability would have endangered the hospital's ability to provide quality medical care. Everhart failed to demonstrate that the decision to reject his application for admission to the medical staff of the hospital violated his right to substantive due process.

AFFIRMED.