Johnny HARRIS

v.

John J. CALLAHAN,[1] in his capacity as Commissioner of the Social Security Administration.

No. 1:96–CV–18.

United States District Court, E.D. Texas, Beaumont Division.

June 5, 1998.

---

1. John J. Callahan was appointed acting Commissioner effective March 1, 1997, succeeding Shirley S. Chater. Pursuant to the last sentence of 405(g) of the Social Security Act, no further action need be taken. 42 U.S.C. § 405(g) ("... any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

Ernest L. Sample, Beaumont, TX, for Plaintiff.

Stephen MacArthur Mason, Asst. U.S. Atty., Tyler, TX, for Defendant.

### ORDER

SCHELL, Chief Judge.

For reasons stated in the accompanying memorandum opinion adopting the Report and Recommendation of the United States magistrate judge and overruling plaintiff's objections, it is

**ORDERED, ADJUDGED** and **DE-CREED** that the Commissioner's decision denying plaintiff's application for disability benefits during the period of May 6, 1992 through July 26, 1995 is **AFFIRMED,** and this portion of the complaint is **DISMISSED.** It is further

**ORDERED, ADJUDGED** and **DE-CREED** that plaintiff's application for disability benefits during the period of April 1, 1991 through May 5, 1992, is **REMANDED** to the Commissioner for consideration in accordance with due process notice requirements stated in the report and recommendation of the United States magistrate judge. It is further

**ORDERED** that the administrative record developed on remand shall include evidence of any prior application and decision if plaintiff's claim for disability benefits during the period of April 1, 1991 through May 5, 1992, is again denied based on res judicata.

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

Plaintiff Johnny Harris brings this action seeking judicial review of the final decision by the Commissioner of the Social Security Administration ("Commissioner"). Harris filed an application for disability insurance

benefits for injuries suffered April 1, 1991. The Commissioner dismissed Harris' application for the period from April 1, 1991 to May 5, 1992 based on res judicata, and denied Harris' application for the period from May 6, 1992 to July 26, 1995 based on his conclusion that Harris was not disabled.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) and Local Rules for the Assignment of Duties to United States Magistrate Judges. Jurisdiction is invoked pursuant to 42 U.S.C. § 405(g).

### I. Factual Background and Administrative Proceedings

Plaintiff filed this application for disability benefits on August 9, 1993 for injuries sustained April 1, 1991. While working as a tree trimmer, plaintiff fell 40 feet and suffered a burst fracture of the L1 vertebrae. (Pl.Mot.at.4). The Commissioner denied plaintiff's application initially and on reconsideration.

Plaintiff then requested and received a hearing before the Administrative Law Judge ("ALJ"). (Tr. at.5, 149–176). On June 8, 1995, plaintiff appeared pro se and testified at the hearing. (Tr. at.149–176). Despite plaintiff's lack of recollection of a prior social security application and hearing, the ALJ concluded that Harris had submitted a prior application and had been deemed not disabled through May 5, 1992, the asserted date of the prior hearing. Concluding res judicata prevented re-litigation of the previous application, the ALJ limited Harris' August 9th application to the period beginning May 6, 1992.

The ALJ found that since May 6th, Harris had the residual functional capacity to perform the full range of light work.[2] (Tr. at 15, Finding 6). As such, the ALJ denied plaintiff's application for social security benefits.

Plaintiff then sought Appeals Council review of the ALJ's decision. The Appeals Council concluded that there was no basis to grant Harris' request. (Tr. at.3–4). Having exhausted all administrative remedies, Harris filed this appeal in district court.

### II. Plaintiff's Points of Error and The Commissioner's Responses

By local orders, this court's review is restricted to points of error specifically raised and discussed in briefs submitted after the administrative transcript is filed. *See* ("Notice To Parties In Social Security Appeals and Order" ¶¶ 4, 5 Docket Entry # 3, January 17, 1996 and "Amended Order Directing Filing of Briefs" Dockt Entry # 9, May 24, 1996).

Plaintiff raises five points of error to the ALJ's decision. These points of error essentially raise three objections. First, plaintiff argues that application of res judicata violated his due process rights. Plaintiff claims no recollection of a previous hearing and states that he has no documentation of a prior decision. Further, he asserts that the notice of the hearing was constitutionally infirm in that it provided no notice that res judicata was applicable. Second, plaintiff contends the Appeals Council erred in denying review of the ALJ's decision. Plaintiff claims it was an abuse of discretion for the Appeals Counsel not to review, reverse, or set aside the ALJ's decision. Third, plaintiff complains that the Commissioner's decision is not supported by substantial evidence. Plaintiff claims his impairment or combination of impairments equals or exceeds the listings of impairment outlined at 1.00B and 1.05 of appendix I of Subpt. P of the social security regulations. (Pl's Mot. at 30–31).

Plaintiff asserts a mental impairment which, in combination to physical impairment, renders him disabled. Plaintiff's asserted mental impairment is the result of what he characterizes as a low IQ, depression, and migraine headaches. In fact, plaintiff's motion applauds plaintiff for attaining the position of foreman despite plaintiff's IQ of 77, and his having failed 3rd grade. (Pl's Mot. at 2). Plaintiff's IQ results in what he terms an over-simplification of more complex issues and an inability to reflect or properly

---

**2.** Light work requires the ability to lift up to 20 pounds occasionally and 10 pounds frequently, or if little lifting is required, a job that requires substantial walking, standing, or sitting. 20 C.F.R. § 404.1567(b) (1997).

analyze questions. Plaintiff claims these deficiencies were apparent during the administrative hearing and in discussions with doctors or family members. (Pl's Mot. at 5). Such a lack of intellect, plaintiff asserts, is a disability in itself, or, at a minimum, creates a disability in light of plaintiff's physical impairments.

The Commissioner responds that res judicata is not an "issue," but rather a legal doctrine. (Resp. at 9). The Commissioner contends that a legal doctrine requires no notice before its application. Defendant argues further, that substantial evidence supports the ALJ's findings. The Commissioner points to step 5, where the ALJ relied on the medical-vocational guidelines to conclude that there was work available which plaintiff could perform. (Resp. at 8).

The Commissioner also argues that plaintiff meets no provisions of the listings and that the ALJ's conclusion was proper. According to the Commissioner, the medical evidence does not support plaintiff's contention that his back impairment meets section 1.05C. The Commissioner points to medical evidence by Drs. Cherry, Thorpe, and McMullen who noted that plaintiff had normal strength in both lower extremities and no evidence of back spasm, and no other indication of muscle wasting, joint inflammation, or swelling.

Defendant rejects any notion that plaintiff has a mental impairment. Defendant notes that between May 6, 1992 and July 26, 1995, plaintiff received psychiatric treatment on four occasions and neither psychiatrist diagnosed him with a mental impairment. As a result, defendant argues plaintiff has failed to show the four symptoms required to establish depression under 12.04(A). Further, defendant contends plaintiff failed to establish subaverage intellect as required under 12.05 and 12.06.

### III. Judicial Review

The court's limited role is to determine whether the Commissioner applied the proper legal standards and whether the decision is supported by substantial evidence. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992). Substantial evidence is more than a scintilla, but less than a preponderance, *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992), it requires evidence relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion, *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Marcello v. Bowen,* 803 F.2d 851, 853 (5th Cir.1986) (citing *Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983)), and must be "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 299–300, 59 S.Ct. 501, 504–05, 83 L.Ed. 660 (1939), *cited in* Harvey L. McCormick, SOCIAL SECURITY CLAIMS AND PROCEDURES § 672, at 193 & n. 1 (4th ed.1991).

This court should scrutinize the whole record to determine whether substantial evidence exists. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994), *cert. denied* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir.1983). The court may not, however, reweigh the evidence or review the ALJ's decision *de novo. Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir.1989); *Neal v. Bowen,* 829 F.2d 528, 530 (5th Cir.1987). Rather, it is for the Commissioner to weigh the evidence and to resolve any conflicts. *Anthony v. Sullivan,* 954 F.2d at 295; *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir.1990). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. at 230, 59 S.Ct. at 217); *see also,* 42 U.S.C. § 405(g).

■ To determine whether substantial evidence supports the Commissioner's decision, the court must examine four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain; and (4) claimant's educational background, age, and work history. *Owens v. Heckler,* 770 F.2d 1276, 1279 (5th Cir.1985) (citing *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972)).

## IV. Procedural Due Process and the Administrative Process

### A. Legal Precepts

Procedural due process requires notice of the hearing and an opportunity to be heard. Whenever the United States is taking an individual's life, liberty or property, the protections of due process apply. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (stating that "[w]e have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest' ") (*quoting, Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971)); *Everhart v. Jefferson Parish Hosp. Dist.*, 757 F.2d 1567, 1570 (5th Cir.1985).

■ Due process requires more than mere notice; rather "meaningful notice" is required before a hearing will comport to the requirements of due process. *Cuellar v. Texas Employment Comm.*, 825 F.2d 930, 934 (5th Cir.1989) (*citing, Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). Notice is "meaningful" where it provides the recipient a explanation of what will be covered at the hearing. *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970).

■ In a social security context, a notice that fails to inform applicants of material factors that could lead to an adverse decision violates procedural due process. *See, Walje v. Shalala*, No.Civ.A. 93–2483–EEO, 1994 WL 477254, at *3 (D.Kan. Aug.1, 1994) (notice violates procedural due process where pro se applicant not notified of hearing); *Christopher v. S.H.H.*, 702 F.Supp. 41, 42–43 (N.D.N.Y.1989) (ambiguous notice to pro se applicant which could have failed to inform her of adverse effect of not requesting reconsideration violates due process); *Butland v. Bowen*, 673 F.Supp. 638, 640–42 (D.Mass. 1987) (notice that misinformed pro se applicant as to res judicata consequences of abandoning the claim violates procedural due process); *Dealy v. Heckler*, 616 F.Supp. 880 (D.Mo.1984) (notice that failed to inform pro se applicant of res judicata effect of abandoned claim violates procedural due process); *Broome v. Heckler*, 562 F.Supp. 868, 870 (W.D.N.C.1983) (denial of due process where ALJ applied res judicata without giving applicant prior notice and opportunity to defend); *Kapp v. Schweiker*, 556 F.Supp. 16, 21 (N.D.Cal.1981) (no "meaningful notice" where notice failed to disclose res judicata issue as possible grounds for denial of benefits).

The social security regulations contemplate administrative hearings that satisfy procedural due process requirements. Section 404.938 provides:

[N]otice of hearing will be mailed to the parties last known addresses, or given by personal service, unless you have indicated in writing that you do not wish to receive the notice. The notice will be mailed or served at least 20 days before the hearing. *The notice of hearing will contain a statement of the specific issues to be decided* and tell you that you may designate a person to represent you during the proceedings.

20 C.F.R. § 404.938 (emphasis added). The notice requirement applies even if the ALJ decides to consider a new issue after an initial notice is sent.

*Notice of a new issue.*

The administrative law judge shall notify you and any other party if he or she will consider any new issue. Notice of the time and place of the hearing on any new issue will be given in the manner described in 404.938.

20 C.F.R. § 404.946(b)(2). Thus, the regulations contemplate an applicant will receive notice and a hearing on any issues affecting the evaluation of their application.

### B. Analysis

■ Application of res judicata to Harris' case without first notifying him of its applicability violated his due process rights. *Walje*, 1994 WL 477254 at *3; *Broome*, 562 F.Supp. at 870; *Kapp*, 556 F.Supp. at 21. Harris should have been provided the opportunity to have presented or prepared something ·in writing for the ALJ to consider in reaching his decision to apply res judicata. *Id.* He should have been allowed to review the file

and ascertain whether a prior application had been filed and to determine if there was new and material information which warranted re-opening the closed file. *Id.* He may have chosen to seek the advice of and be represented at the hearing by an attorney. No matter which option, if any, Harris ultimately would have chosen, due process requires the ALJ provide meaningful notice to provide him the opportunity to chose whichever option he deemed prudent. *See, Walje,* 1994 WL 477254, at \*3; *Broome,* 562 F.Supp. at 870; *Kapp,* 556 F.Supp. at 21.

This is not a case where plaintiff's right to benefits is decided. Rather, this report considers, at plaintiff's request, whether the notice of hearing was meaningful within due process purposes. Because the notice failed to inform Harris that his application might be partially denied on res judicata grounds, it was not "meaningful" and therefore violated Harris' due process rights.

This case should be remanded to the ALJ to fully develop the record as to a prior hearing. Moreover, a transcript of any such hearing should be made part of the administrative record. If there was no prior hearing, the ALJ should consider plaintiff's application for benefits for the period of April 1, 1991 through May 5, 1992.

## V. Does Substantial Evidence Support the ALJ's Conclusion?

The ALJ considered plaintiff's application for the period beginning May 6, 1992. Although remand is necessary for the period between April 1st and May 5th, it is not necessary to remand the case for the entire period for which plaintiff originally sought benefits. The Fifth Circuit Court of Appeals endorses the notion that an applicant may receive both favorable and unfavorable decisions as a result of the same application. *See e.g., Bowling v. Shalala,* 36 F.3d 431 (5th Cir.1994); *Harris v. S.H.H.,* 959 F.2d 723, 724 (8th Cir.1992) ("This court consistently has held that disability is not an 'all-or-nothing' proposition; a claimant who is not entitled to continuing benefits may well be eligible to receive benefits for a specific period of time.") (citations omitted).

## A. Legal Precepts: Eligibility for Disability Benefits

To qualify for disability benefits, a claimant must be under age 65, file an application for disability benefits, and be under a disability as defined by the Act. *See* 42 U.S.C. §§ 416(i), 423(a). Those claiming disability insurance benefits under the Act have the burden of showing the existence of a disability. *Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir.1979), *cert. denied,* 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979); *Rhynes v. Califano,* 586 F.2d 388 (5th Cir. 1978); *Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir.), *cert. denied,* 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973).

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is one which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To help claimants know when they are disabled, the Commissioner adopted the five-step sequential analysis. *See* 20 C.F.R. § 404.1520. First, the Commissioner ascertains whether the applicant is currently engaging in substantial gainful activity. If so, a finding of nondisability is entered and the inquiry ends. Second, the Commissioner determines if the applicant's impairment or combination of impairments is severe. That is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities. If not, the inquiry ends and a finding of nondisability entered. Third, does the severe impairment equal or exceed those in the Listing of Im-

pairments, 20 C.F.R. Subpt. P, Appendix 1? If so, disability is presumed and benefits awarded. Fourth, does the impairment prevent the plaintiff from engaging in his regular previous employment? If so, a *prima facie* case of disability is established and the burden going forward (to the fifth element) shifts to the Commissioner. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.1987). Fifth, is there other work in the national economy which the plaintiff can perform? If the Commissioner has the burden (via step 4) and establishes that an applicant can perform alternative employment, the burden shifts back to the applicant to show he cannot perform the alternative labor. *Id.; Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir.1986); 20 C.F.R. § 404.1520(a)-(f). When an applicant is found to be disabled under the sequential evaluation analysis, they become eligible for benefits under the Act. 42 U.S.C. § 423(a).

## B. Analysis

### 1. The ALJ's Decision prior to May 6, 1992

As stated above, the ALJ did not consider the period from April 1, 1991 through May 5, 1992, because he believed plaintiff filed a prior application where a hearing was held on May 5th. Substantial evidence does not support the ALJ's decision to apply res judicata.

The record is deplete of any evidence upon which the ALJ's decision is based. At best, the determination is based on a transcript of a prior hearing that is not in the record now before the court.[3] At worst, the decision is based on pure conjecture and speculation. Nevertheless, there is no evidence whatsoever in this record indicating the existence of a prior application or hearing. Therefore, there is no evidentiary support for the ALJ's application of res judicata. As for the period ending May 5, 1992, this case lacks even the scintilla of evidence necessary to affirm the ALJ's decision.

### 2. ALJ's Decision for Period After May 5, 1992

██ The ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to engage in light work after May 5th. In reaching this conclusion, the ALJ determined that plaintiff's impairments did not equal or exceed the listings. Further, he concluded that there was work available in the national economy that someone with plaintiff's RFC could perform.

Plaintiff argues that substantial evidence does not support the ALJ's decision because plaintiff's impairments meet the listings. (Pl's Mot. at 28–29). While plaintiff admits a "burst fracture" of the 1st lumbar vertebrae of the type he suffered does not meet the listings, he contends he meets the listings by virtue of having non-severe impairments that aggravate his condition. Specifically, plaintiff claims his burst fracture, combined with "psychotic fits of despair, loss of sleep, and a morbid fear of pain relieving drugs," meets or exceed the listings of 1.00B and 1.005 of the social security regulations. (Pl's Mot. at 30–31). Further, he claims these impairments are aggravated by mental disorders in listings 12.041(A)(1) & (2), and 12.05(C) & (D), anxiety disorders listed in 12.06, migraine headaches, and loss of sleep. (*Id.*).

The Commissioner responds that plaintiff does not meet the listings. Noting that 1.00(B) is not a listing at all, but rather a explanation of terminology, the Commissioner rejects any suggestion that plaintiff can meet or exceed the "listing" of 1.00(B). Additionally, the Commissioner contends that plaintiff does not meet 1.05(C) because plaintiff failed to show that he suffered pain, muscle spasm, significant limitations of motion in the spine, and appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss, all required by 1.05(C). The Commissioner also argues that plaintiff has failed to establish how his mental impairment meets the listed impairment of 12.04(A)(1) & (2), and 12.05(C) & (D). The Commissioner notes that although plaintiff states he has a mental

---

**3.** The Commissioner's brief refers to a "Supplemental Transcript" which supports his contention that a prior hearing was held. (Dft. Br. at

9). However, no such supplemental transcript is presently before the court.

disorder, the credible medical evidence does not support plaintiff's assertions. Finally, the Commissioner rejects plaintiff's claims that he has an anxiety-related disorder listed in 12.06.

As stated in V(A), the third step of the sequential evaluation process requires that the ALJ determine whether an applicant's impairments equal or exceed those in the listings. If they do, the person must be found disabled and benefits awarded. *See* 20 C.F.R. § 404.1520(d). Defendant admits that spinal injuries such as the one plaintiff suffered do not, alone, meet the listings. Section 1.05(C), however, is a catchall provision which allows applicants to meet its requirements if certain other conditions exist.

Of the various additional limitations that must be shown, plaintiff only suggested that he suffered from pain. To meet 1.05(C), however, plaintiff would have to show muscle spasm, significant limitation of motion in the spine, appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. *See* 20 C.F.R. Part 404, Subpt. P, App. 1.05(C)(1) and (2). Plaintiff has failed to show how he suffers from any of the other conditions of 1.05(C).

The court's independent review of the record reveals no evidence supporting plaintiff's contentions that his impairments meet 1.05(C). During the period actually considered by the ALJ, May 6, 1992 to June 8, 1995, plaintiff was examined by Elizabeth Szalay, M.D., Lila Cherry, M.D., Tyrrel Grohman, M.D., Ronald Corley, M.D., Curtis D. Thorpe, M.D., and Faber F. McMullen, M.D. Dr. Szalay examined plaintiff in August 1992 when he informed her that his condition was improving. He admitted that he could mow his lawn regularly, although he experienced back pain afterwards. (Tr. at 137). She suggested physical therapy. In April 1993, Dr. Szalay again examined plaintiff and observed that his x-rays looked excellent and that the fusion was solid. (Tr. at 137). She noted no other symptoms.

Dr. Cherry examined plaintiff on March 8, 1994 and observed that "clinically there is no evidence to suggest acute lumbo-sacral radiculopathy." (Tr. at 140). Dr. Cherry noted that rods in plaintiff's spine were in good position and showed no evidence of fracture

or loosening. Like Dr. Szalay, Dr. Cherry did not note any additional characteristics of plaintiff's condition.

On December 4, 1994, Dr. Corley examined plaintiff and noted that he complained of constant and chronic pain. Dr. Corley stated, however, that plaintiff's x-rays revealed that the fusion remained consistent. Further, on December 21, 1994, Dr. Thorpe made the following diagnosis:

On examination today, he has mid line healed incision, minimal motion in his back no radicular complaints and no radicular symptoms. Reflexes are symmetrical. X-rays of the lumbar spine taken, do show healing of the fracture but it is unknown whether his fusion is solid or not. Advised him that his pain could be coming from his non union, but it would take oblique tomogram to better visualize this. At this point he is permanently and totally disabled from his previous occupation and probably could not return to any job which would require strenuous physical activity. Return as needed.

(Tr. at 144).

Finally, Dr. McMullen examined plaintiff on April 6, 1995. Dr. McMullen stated that plaintiff complained of back pain and had difficulty sleeping. (Tr. at 146 and 147). Regarding plaintiff's back condition, Dr. McMullen stated that plaintiff was in no acute distress. (Tr. at 146).

Since May 6, 1992, the medical evidence indicates that plaintiff's condition does not meet the listings of 1.05(C). While plaintiff complained of pain, he did not experience the other symptoms necessary to meet 1.05(C). Moreover, except Dr. Corley, each of his doctors consistently concluded that his fusion remained intact. Further, Dr. Corley's opinion only supports the conclusion that plaintiff is disabled from strenuous physical work, not from light or sedentary work activities. Substantial evidence supports the ALJ's conclusion.

■ Plaintiff's assertions of a mental disorder and anxiety suffer from the same flaw: there is simply no medical evidence in the record to substantiate such a conclusion. Plaintiff claims he has a mental disorder

meeting sections 12.04(A)(1) & (2), and 12.05(C) & (D) and anxiety meeting the requirements of 12.06. Section 12.04 relates to mood disturbances which are so prolonged so as to "color the entire psychic life." 20 C.F.R. § 12.04. Section 12.06 requires medically documented findings of an anxiety disorder that predominates the plaintiff or is experienced when the plaintiff attempts to face the dreaded object or activity. Although plaintiff has asserted loss of sleep, he has failed to assert any of the other conditions necessary to meet the listings in either 12.04(A)(1) or 12.04(A)(2).[4] Moreover, while plaintiff complains of depression, he provides no medical evidence suggesting clinical depression, as required by 12.06.

■ The ALJ also considered the combined effect of plaintiff's physical impairments with his asserted mental condition. The ALJ noted that:

He has alleged an inability to work due to back pain for which he takes medications. He testified he can stand a long time, walk up to three blocks at a normal pace, has no problem using his hands, can lift books and clothes, but it hurts to stand and wash dishes. Since his release from his doctor, he mows his yard, one acre, using a riding mower, helps clean house, folds clothes, studies photography, reads, conducts Bible study with his family, and is a part-time lay preacher for the Jehovah's Witnesses. He is not paid for church work. Back in 1991 and 1992 he saw a psychiatrist for depression but stopped going because he felt he was[not] being helped and because he had a bad reaction to medication. He has never been in a hospital for a mental problem and took Prozac for only about three months. Every now and then he lifts something too heavy, such as a chair or end of a table or tree limb. He drives once per day to either preach or just to ride and helps his wife with cleaning. The evidence as a whole supports a capacity to perform light work activity but not his past work as a tree trimming working foreman. His daily work activities further supports a light work capacity.

(Tr. at 5–6).

There is substantial evidence that Harris' alleged mental impairment combined with his physical impairments would not be expected to interfere with his ability to work, considering his age, education or past work experience. A careful review of the ALJ's decision reveals that he found that Harris' physical impairments left him capable of engaging in light physical work activities, and that his alleged mental impairment was non-severe and did not prevent him from performing jobs in that range. That Harris could act as a lay preacher and regularly mow his lawn and engage in domestic duties support this conclusion. As such, this point of error should be overruled.[5]

## VI. Appeals Council Review

### A. Role of Appeals Council

The Appeals Council acts as final arbitrator of decisions of the ALJ. Whenever a claimant disagrees with an ALJ's decision in any respect, he may seek review by the Appeals Council. See 20 C.F.R. § 404.965. The Appeals Council is to review a case where, inter alia, there is an abuse of discretion by the ALJ, or if the ALJ's decision is not supported by the substantial evidence.

---

4. Section 12.04(a)(1) requires medically documented persistence, continually or intermittent, of one of nine symptoms: (1) anhedonia or pervasive loss of interest in almost all activities, (2) appetite disturbance with change of weight, (3) sleep disturbance, (4) psychomotor agitation or retardation, (5) decreased energy, (6) feelings of guilt or worthlessness, (7) difficulty concentrating, (8) thoughts of suicide, or (9) hallucinations, delusions, or paranoid thinking. 20 C.F.R. Part 404, Subpt. P, App. 12.04(A)(1).

Section 12.04(A)(2) requires medical evidence of a manic syndrome characterized by at least three of the following: (1) hyperactivity, (2) pressure of speech, (3) flights of ideas, (4) inflated self-esteem, (5) decreased need for sleep, (6) easy distractibility, (7) involvement with activities that have a high probability of painful consequences which are not recognized, or (8) hallucinations, delusions, or paranoid thinking. 20 C.F.R. Part 404, Subpt. P, App. 12.04(A)(2).

5. The Court notes that even if plaintiff cannot perform light work duties, the ability to perform light work includes the ability to perform sedentary work. Sedentary work involves lifting no more than 10 pounds and occasionally carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). Given plaintiff's admitted involvement in yard work, house keeping, and as a lay preacher, he seems able to perform at this more relaxed level.

20 C.F.R. § 404.970(a)(1), (3). The Appeals Council may dismiss the appeal, grant review and render a decision, or remand the case back to the ALJ. 20 C.F.R. § 404.979. The decision of the Appeals Council is binding, unless the claimant files suit in federal district court. 20 C.F.R. § 404.981.

## B. Analysis

 Plaintiff objects to the Appeal Council's decision to not review the ALJ's findings. The regulations provide that the Appeals Counsel will review the ALJ's decision if substantial evidence does not support the decision, or if new information is available which would materially affect the ALJ's decision. Neither reason is present in the instant case. As stated above, substantial evidence supports the ALJ's conclusion of no disability after May 6, 1992. Additionally, plaintiff points to no new or additional evidence that was submitted to the Appeals Council. This point of error should be overruled.

## VII. Recommendation

The Commissioner's decision violates Harris' procedural due process rights by not notifying him that res judicata would deny consideration of the period from April 1, 1991 through May 5, 1992. Further, the Commissioner's decision is not supported by substantial evidence. The record presently before the court contains no evidence of a prior hearing or decision. As such, this case should be remanded to the ALJ with instructions to develop the record and to determine whether a prior hearing occurred. If the government fails to establish a prior application, the ALJ should consider Harris' application for the period of April 1, 1991 to May 5, 1992.

The remainder of the ALJ's decision is supported by substantial evidence. The portion of the ALJ's decision denying plaintiff's application from May 6, 1992 through July 26, 1995 should be affirmed and this portion of the case dismissed.

## VIII. Objections

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objection to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendation contained in this report within 10 days after service shall ban an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations.