**Adel G. NAFRAWI, Plaintiff,**

v.

**HENDRICK MEDICAL CENTER, Dr. Roy Willingham, and Dr. Jim Williams, et al., Defendants.**

**Civ. A. No. CA–1–87–87–W.**

United States District Court, N.D. Texas, Abilene Division.

Dec. 22, 1987.

Charles Scarborough, Abilene, Tex., for plaintiff.

Alison L. Smith, David M. Bond, Cleso M. Gonzales-Falla, Vinson & Elkins, Houston, Tex., Charles R. Griggs, Nunn, Griggs, Wetsel & Jones, Sweetwater, Tex., for defendants Hendrick Medical Center & Dr. Roy Willingham.

Don Anderson, Whitten, Haag, Hacker, Hagin & Anderson, Abilene, Tex., for defendant Dr. Jim Williams.

## OPINION

WOODWARD, Senior District Judge.

When Hendrick Medical Center (Hendrick) reduced the surgical privileges of Dr. Adel G. Nafrawi, he filed suit against the hospital and two of its credentialed physicians charging violations of his rights to due process and equal protection under the fourteenth amendment to the United States Constitution and a conspiracy in restraint of trade in violation of the Texas Free Enterprise and Antitrust Act of 1983, Tex. Bus. & Com.Code Ann. § 15.05(a) (Vernon 1987). After defendants removed the case to this court, plaintiff amended his complaint, removing the causes of action under the United States Constitution and substituting a due process claim based on article 1 section 19 of the Texas Constitution.

Defendants answered and filed a counterclaim seeking declarations that (1) they are immune from liability under the Texas Free Enterprise and Antitrust Act; (2) even if they are not so immune, they did not violate that Act; (3) they are not state actors for purposes of the due process clause; and (4) even if they are state actors for due process purposes, they did not violate plaintiff's due process rights.

### I. Factual Background

Dr. Nafrawi, a physician licensed by the state of Texas, obtained medical staff privileges at Hendrick in 1975. His practice at Hendrick included, but apparently was not limited to, thoracic, vascular, peripheral vascular, and emergency surgery.

Around October, 1986, Hendrick's Quality Assurance Committee noticed that Dr. Nafrawi seemed to be the subject of an increasing number of "critical indicator forms" filed by the nursing staff. These filings indicated a possible problem in the quality of patient care Dr. Nafrawi was providing and led to the appointment of a sub-committee to review Dr. Nafrawi's performance. The sub-committee, in turn,

concluded that there were sufficient bases for concern to warrant further investigation.

Dr. Meredith Jensen, Vice-Chair of Hendrick's General Surgery Section, appointed an Ad Hoc Investigatory Committee (Investigatory Committee) consisting of Drs. Gary Walker, John Stackhouse, and defendant Jim Williams. On November 18, 1986, the Investigatory Committee began its work with a review of fourteen (14) patient files. In conformity with Hendrick's Medical Staff Bylaws, the Investigatory Committee determined that Dr. Nafrawi should be offered an opportunity for an interview.

Accordingly, Dr. Walker notified Dr. Nafrawi of the investigation and of the Investigatory Committee's desire to interview him on November 20. Dr. Walker also informed Dr. Nafrawi of the cases under investigation and the possible problems each case revealed. Dr. Nafrawi was also told he could review the patient charts before the meeting. On November 19, Dr. Nafrawi did review those charts.

On November 20, Dr. Nafrawi met with the Investigatory Committee. He and the Committee discussed the fourteen (14) cases and the treatment he had provided in each. The contents of the critical indicator reports were disclosed to Dr. Nafrawi, although he was not permitted access to the documents themselves.

On December 11 and 15, 1986, the Investigatory Committee met again (this time outside Dr. Nafrawi's presence), interviewed witnesses, and voted unanimously on its recommendations to the Medical Board (Board). The Board met with Dr. Nafrawi on December 19. They presented him with the list of sanctions recommended by the Investigatory Committee and offered him an opportunity to respond. The Board then voted unanimously to adopt the Investigatory Committee's recommendations and send them to Hendrick's Board of Trustees (Trustees). On December 23, 1986, Dr. Nafrawi was given written notice of the Board's action and advised of his right to request a hearing.

Dr. Nafrawi's counsel made a written request for a hearing on January 20, 1987, and two weeks later, on February 3, he was advised that an Ad Hoc Hearing Committee (Hearing Committee)—composed of Drs. defendant Roy Willingham, L. Shannon Holloway, and R. Lee Rode—had been appointed and a hearing had been scheduled for February 23, 1987. At the request of Dr. Nafrawi's attorney, that hearing was delayed until February 26.

Eight days before the hearing, the Hearing Committee notified Dr. Nafrawi that it would review ten (10) cases, including four (4) not considered by the Investigatory Committee. At his objection, the additional cases were dropped from consideration. The Hearing Committee also offerred to delay the hearing if either Dr. Nafrawi or his attorney wanted additional time to prepare. The offer was declined.

On February 24, 1987, Dr. Nafrawi and his attorney privately reviewed Hendrick's records of the cases the Hearing Committee was to consider. They were allowed to take notes, although they were not permitted to remove materials. Dr. Nafrawi's attorney looked through the hospital's records again on February 26, before the hearing began.

The hearing took place over three days. The Chairman of the Quality Assurance Committee presented the charges against Dr. Nafrawi and introduced written evidence. Dr. Nafrawi, through his counsel, called and examined twenty (20) witnesses and introduced a deposition from another. A written transcript of the hearing was prepared. On April 21, 1987, the Hearing Committee sent its unanimous recommendations, along with the written hearing record, to the Medical Board. The Medical Board, in turn, unanimously adopted the recommendations of the Hearing Committee and forwarded them to the Trustees.

Two days later, Dr. Nafrawi was notified by letter of the Medical Board's decision and of his right to request appellate review by the Trustees.

On May 18, 1987, Dr. Nafrawi requested that review, and on May 26 he was notified that the Trustees would hold a review hear-

ing on June 15, 1987. Before the hearing, Dr. Nafrawi had the opportunity to review the Medical Board's report and the record of the Hearing Committee. Both he and the Medical Board submitted pre-hearing written statements to the Trustees setting out their concerns.

The Trustees' review hearing was held as scheduled. Dr. Nafrawi, appearing personally and through counsel, presented oral argument and rebuttal. A representative of the Medical Board presented their argument, and the written statements were reviewed. A court reporter was present and prepared a verbatim transcript. The Honorable Raleigh Brown, Judge, Texas Court of Appeals, Eastland, served as Parliamentarian. Following the review, the Trustees met and, with modifications, adopted the recommendations of the Medical Board. The next day, June 24, 1987, Dr. Nafrawi was notified of the Trustees' action.

Because the Trustees' decision was not identical with that of the Medical Board, the matter was referred to a Joint Conference Committee for review and recommendation. On June 25, that Committee recommended that the Trustees' decision be made final. On July 1, 1987, the Trustees officially adopted the sanctions and sent notice to Dr. Nafrawi that they were effective immediately.

As of July 1, 1987, then, the decision was implemented:

1. That Dr. Nafrawi's Hendrick Medical Center Trauma Center privileges be immediately revoked;

2. That Dr. Nafrawi's surgical privileges be limited to elective cases posted more than 24 hours in advance; and

3. On every case in which Dr. Nafrawi is the primary surgeon, that he be required to obtain, throughout the entire operative procedure, the assistance of a qualified Hendrick Medical Center staff surgeon credentialed for that procedure(s).

Dr. Nafrawi filed his suit in the 350th District Court of Taylor County, Texas, on July 27, 1987. The action was removed to this court on August 3. On August 17 a hearing was held on Dr. Nafrawi's motions for remand and for a temporary restraining order to prevent Hendrick from implementing its sanctions. Both motions were denied, but given the serious nature of the alleged deprivations of Dr. Nafrawi's rights, an expedited trial was held in November, 1987.

## II. *Plaintiff's Allegations*

Plaintiff raises basically three charges against the various defendants. First, he asserts that the named defendants, Hendrick, Dr. Williams, and Dr. Willingham, along with one Pat Preston, a nurse at Hendrick, entered into a conspiracy to deprive him of his hospital privileges. Second, he asserts that the various investigatory, hearing, and review boards and committees which examined his work at Hendrick acted arbitrarily and capriciously in determining which evidence to hear and how to hear and evaluate it and in reaching the decisions they did, thereby denying him his rights to due process. Third, he charges that there was no substantial evidence to support any of the sanctions imposed (or, it may be presumed, recommended but not imposed).

Dr. Williams is alleged to have acted out of economic self-interest to subvert the work of the Investigatory Committee on which he served. The allegation is based on the fact that Dr. Williams, like Dr. Nafrawi, is a thoracic and vascular surgeon operating in Abilene, Texas, with privileges at Hendrick. Therefore, it is claimed, they are competitors and it is to Dr. Williams' advantage to harm Dr. Nafrawi's practice.

Dr. Willingham is alleged to have acted from animus generated in a disagreement several years earlier. Dr. Nafrawi was, at the time, appointing the members of an investigatory committee and Dr. Willingham objected to the inclusion on that committee of a physician whom Dr. Nafrawi describes as a competitor of the investigation's subject. Dr. Nafrawi claims that Dr. Willingham then threatened him with professional destruction and, presumably, had been awaiting this opportunity to carry out his threat.

The alleged motivations of Hendrick and of nurse Preston are less clear, though nurse Preston, too, is charged with malice.

### III. *Findings of Fact and Conclusions of Law*

#### A. Restraint of Trade

■ The Texas Free Enterprise and Antitrust Act of 1983 provides that "[e]very contract, combination, or conspiracy in restraint of trade or commerce is unlawful." Tex.Bus. & Com.Code Ann. § 15.05(a) (Vernon 1987). Application of that strong language is to be achieved "in harmony with federal judicial interpretations of comparable federal antitrust statutes." *Id.* § 15.04. Establishing a violation of the act, then, requires the same elements as are required to establish the comparable violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Specifically, a plaintiff must show both the existence of a conspiracy to restrain trade *and* that the intended restraint on trade is unreasonable. *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 988 (5th Cir. 1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984).

In regard to the first of the threshhold elements, there was no credible evidence presented to the court of a conspiracy in restraint of trade. No witness at the trial actually asserted that any of the defendants conspired with each other or with anyone else to interfere with Dr. Nafrawi's practice.

Dr. Nafrawi presented no evidence, and Dr. Willingham denied that he conspired with anyone. Because they do not share the same medical specialty, Dr. Willingham could have had no economic motive to conspire against Dr. Nafrawi. Moreover, although he served on both the Hearing Committee and the Joint Conference Committee, there is no evidence to suggest that Dr. Willingham sought out either appointment. Indeed, he asserted that he accepted the appointment to the Hearing Committee only because he believed it his obligation to do so as a physician and as a member of the Hendrick medical staff. Any personal bias or animus he may have felt toward Dr. Nafrawi was not shown to have affected any of his actions.

Dr. Nafrawi also presented no evidence, and Dr. Williams denied, that he conspired with anyone. No evidence was presented indicating that he might have sought out the opportunity to serve as a reviewer of Dr. Nafrawi, and he testified that he accepted appointment to the Investigatory Committee only because he believed it his obligation to do so as a physician and as a member of the Hendrick medical staff. His sole alleged motive, economic self-interest, was not shown to have had any effect on his actions; in fact, after the Investigatory Committee concluded its work, Dr. Nafrawi commended its members, including Dr. Williams, on the fairness of their investigation.

Nor was any evidence presented which would indicate that nurse Preston conspired with anyone in restraint of trade. As the Patient Care Co-ordinator of the operating room at Hendrick, she is responsible for filing critical indicator forms when she considers patient care adversely affected by physician actions. Of course, there can have been no competitor relationship between nurse Preston and Dr. Nafrawi which might have served as motivation for conspiracy. There was no evidence presented that she sought out special opportunities to file those forms or that any animus she might have had toward Dr. Nafrawi had any influence upon her actions in filing the forms or in testifying before the Investigatory Committee.

Furthermore, there is no evidence showing that the sanctions imposed on Dr. Nafrawi (or those that were recommended at various stages of the review procedure though not, ultimately, imposed) have, have had, or might have any anti-competitive effect. Trade has not been restrained.

Any procedure Dr. Nafrawi was formerly able to perform at Hendrick he is now able to perform at Humana Hospital-Abilene, where he continues to maintain full surgical privileges and where the surgical facilities are comparable to those at Hendrick. Of course, if Dr. Nafrawi is still able to perform any surgery he once was,

any patient who wishes him as a surgeon is still able to seek out his services. Moreover, because four other physicians in Abilene have the same surgical specialties as Dr. Nafrawi, even if he no longer practiced medicine at all, patients in the Abilene area could still obtain services identical to those he provided.

### B. Due Process

Plaintiff asserts that the various investigations, hearings, and reviews of his surgical competence and privileges were held in such a fashion as to deprive him of his due process rights. The threshholds past which any due process inquiry must pass include a "legitimate claim of entitlement," *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), and some form of state action.[1]

While no question has been raised regarding whether Dr. Nafrawi had a property right in his surgical privileges at Hendrick, discovering a form of state action has been more difficult since Hendrick is a private hospital. Two bases for state action have been suggested.

The Texas Hospital Licensing Law provides that "[T]he process for considering applications for medical staff membership and privileges shall afford each applicant procedural due process." Tex.Rev.Civ. Stat.Ann. art. 4437f § 17(c) (Vernon Supp. 1987). While the Act by its terms does not include consideration of the removal of medical staff membership and privileges, such a reading would not be incompatible with the Act's further assertions that applicants "may not be denied membership or privileges on any ground that is otherwise prohibited by law," *id.* § 17(d), and that hospitals may adopt

"reasonable rules, regulations, and requirements relating to qualifications for medical staff appointments or any categories thereof, terminations of appointments, the delineation of clinical privileges, or the curtailment of clinical priviletges of those who are appointed to the medical staff *so long as* those rules, regulations, and requirements are determined on a reasonable basis, such as professional and ethical qualifications of the applicant for medical staff membership, and are in compliance with the provisions of this Act,"

*id.* § 18(5) (emphasis added). Because these provisions have yet to be construed by any Texas appellate court, their scope has not been authoritatively determined.

Alternatively, state action might be found in licensing by the State of Texas and in the degree of the hospital's funding (somewhere in the range of 37–44 per cent) and the concommitant control of its fees by Medicare, Medicaid, and Champus.

Yet in *Greco v. Orange Memorial Hospital Corp.,* the court held that "[f]ederal financial assistance does not bring an otherwise private facility within the parameters of ... the Fourteenth Amendment." 513 F.2d 873, 876 n. 3 (5th Cir.), *cert. denied,* 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975). And the *Greco* court found insufficiently compelling the additional facts that the hospital was built with federal and county money; both the building and the land on which it sits are owned by the county and leased for the nominal sum of one dollar ($1.00) per year; and the lease specifically holds that *inter alia* the lessee "has undertaken to relieve lessor of the responsibility and expense of operating a hospital." *Id.* at 876. Even so seemingly significant an added fact as that government officials serve as *ex officio* members of a hospital's board of governors may not generate a finding of state action in the "permanent suspension" of a physician from a hospital's medical staff. *Madry v. Sorel,* 558 F.2d 303 (5th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

Assuming, *arguendo,* that Dr. Nafrawi was entitled to due process protection, the next question would be "What process is due?" *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d

---

1. No special analysis is required simply because the due process cause of action was filed under Texas rather than federal due process provisions. The two are congruent. *See Price v. City of Junction,* 711 F.2d 582, 590 (5th Cir.1983).

484 (1972). The basic standard of procedural due process, of course, is an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Dr. Nafrawi had that opportunity and had it repeatedly.

The procedures Hendrick followed in its investigation, hearings, and review have been set out exhaustively above. There is no need to rehearse them in detail here. Dr. Nafrawi received adequate notice of the hearing, in fact, of several hearings. The notice included advance statements of the charges against him. He was allowed an attorney to represent him at a lengthy hearing before the Hearing Committee. The attorney was permitted to examine witnesses; witnesses were summoned to the hearings, and some twenty-one (21) were heard over a three day period (one of the twenty-one by deposition). Prior to that hearing, as prior to others, Dr. Nafrawi was given written notice of the charges against him by letter identifying specific cases to be considered. When he objected to the list it was modified in accordance with his perception of what was fair.

The various tribunals and committees which were involved in investigating and holding hearings on the charges against Dr. Nafrawi were composed of disinterested doctors and others. No bias was shown; what personal conflicts are indicated by the evidence do not support any finding of bias. Neither Dr. Williams nor Dr. Willingham was shown to have exhibited any prejudice or to have acted upon any. They acted in good faith and on the reasonable belief that their actions and recommendations were warranted by the facts as they knew them. Indeed, Dr. Nafrawi's own evidence negates malice. And there was nothing improper in the appointment of either to any of the committees. Regarding Dr. Williams in particular, it was only proper that an investigatory committee should have at least one person expert in the subject's field of specialization.

The hospital's bylaws provide for more than adequate procedural protection. The record before the court indicates that the hospital substantially complied with those bylaws in all relevant respects.

Ordinarily, the court would do no more than to find that the requirements of procedural due process were satisfied. But the court in this case also heard evidence of what transpired in the various investigations, hearings, and reviews. And the court finds that there was evidence before the hearing bodies which could support the claim of the defendants that Dr. Nafrawi did not have the requisite medical competence to continue his then current level of surgical privileges. While the court recognizes that there was also evidence before those bodies supporting Dr. Nafrawi's claim of medical competence, it is not the function of this court to reweigh the evidence.

The court must accept the findings and conclusions of the hospital's trustees and of its subordinate committees—so long as there is substantial evidence on the record to support them. In this case there is, and the court cannot and will not substitute its judgment for that of a properly constituted tribunal "charged with the responsibility of providing a competent staff of doctors." *Sosa v. Board of Managers*, 437 F.2d 173, 177 (5th Cir.1971). That responsibility rests with Hendrick's Board of Trustees and, insofar as it has delegated that authority, to the delegated bodies. "[T]he court cannot surrogate for [those bodies] in executing this responsibility." *Id.*

It is clear from the record that nothing in the acts of the defendants was shown to be arbitrary or capricious. The hospital's regulations and bylaws were reasonably related to the hospital operation, and the court finds no evidence that they were not fairly administered. The charges against Dr. Nafrawi and upon which he was judged related to his medical competence and there was sufficient evidence in the record before the various committees to support the findings and orders of the Trustees and the various subordinate bodies. No more is required to satisfy the standards of substantive due process. *See Everhart v. Jefferson Parish Hospital District No. 2*, 757 F.2d 1567, 1571 (5th Cir.1985). "Judicial

intervention must be limited to an assessment of those factors which are within the court's expertise to review." It is enough that procedures are fair, standards reasonable, and the application of procedures and standards is neither arbitrary nor capricious. *Woodbury v. McKinnon,* 447 F.2d 839, 845 (5th Cir.1971).

Finally, the court notes that the legislature has provided immunity from civil liability for

"a member, employee, or agent of a medical peer review committee, [or] a member, employee, or agent of a medical organization committee ... who takes any action or makes any recommendation within the scope of the functions of the board [or] committee, ... if such member, employee, or agent acts without malice and in the reasonable belief that such action or recommendation is warranted by the facts known to him or her."

Tex.Rev.Civ.Stat.Ann. art. 4495b § 5.06(f)(2). Therefore, Drs. Williams and Willingham would have immunity from civil damages as long as they acted without malice and in reasonable belief. The court finds that they did.

## JUDGMENT

This action came on for trial before the Court, Honorable Halbert O. Woodward, Senior United States District Judge, presiding, and the issues having been duly tried and a decision having been duly rendered,

It is Ordered and Adjudged that the plaintiff Adel G. Nafrawi take nothing from the defendants Hendrick Medical Center, Dr. Roy Willingham, and Dr. Jim Williams, and that the action be dismissed on the merits.

All costs are assessed against plaintiff.

The Clerk will furnish a copy hereof to each attorney.

ENTERED this 19th day of December, 1987.